Patrick John SHANE, petitioner,
Appellant,

v.

COMMISSIONER OF PUBLIC
SAFETY, Respondent.

No. C4–97–1158.

Supreme Court of Minnesota.

Dec. 3, 1998.

Charles L. Hawkins, Minneapolis, Lisa D. Lodin, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., Michael R. Pahl, Asst. Atty. Gen., St. Paul, for respondent.

■■■■■■■■■■■■

## O P I N I O N

PAGE, Justice.

On January 28, 1997, appellant Patrick John Shane, a passenger in a motor vehicle stopped by Worthington police officers, was arrested for being in physical control of the vehicle in violation of Minn.Stat. § 169.121, subd. 1(a) (1996). Shane's driver's license was revoked pursuant to Minn.Stat. § 169.123, subd. 4(c) (1996), by the Commissioner of Public Safety. Shane sought judicial review of his license revocation. In doing so, he asserted, among other things, that the officers who arrested him lacked probable cause to believe that he was in physical control of the vehicle. After a hearing on Shane's license revocation, the district court issued findings of fact, conclusions of law, and an order sustaining the revocation. On appeal, the court of appeals concluded that there was probable cause to believe that Shane was in control of the motor vehicle and affirmed the district court. Based on the unique facts presented by this case, we conclude that the law enforcement officers who arrested Shane did not have probable cause to believe that he was in physical control of the motor vehicle. Therefore, we reverse.

The facts are undisputed. On January 28, 1997, at around midnight, a police officer stopped a Ford Bronco occupied by the driver and a passenger.[1] Shane, the passenger, was seated in the front passenger seat. Suspecting that the driver was under the influence of alcohol, the officer ordered the driver out of the vehicle to conduct field sobriety tests. As the driver was getting out, Shane, *using an expletive, asked if he could drive the vehicle home.* The officer refused Shane's request and ordered him to remain in the vehicle. The Bronco engine was left running. Shane remained in the vehicle in the

passenger seat while the police officer performed field sobriety tests on the driver. The driver failed to perform the field sobriety tests and was placed in the officer's squad car. While all of this was going on, another police officer arrived as back-up. At some point, both police officers saw Shane lean over in his seat towards the driver's side of the Bronco, disappear from sight for a few seconds, and then return to an upright position in his seat. During the time that Shane was out of sight, the officers observed increased exhaust coming from the Bronco's tailpipe and "heard the vehicle rev up." As a result, the officers became concerned that Shane might try to drive the Bronco away. Approximately 1 minute later, the back-up officer approached the Bronco and ordered Shane to get out. Shane got out, and a brief scuffle ensued between Shane and the officer. After the scuffle ended, Shane was handcuffed and transported to the Nobles County Law Enforcement Center. At the Law Enforcement Center, he was read the Minnesota Implied Consent Advisory and asked if he would consent to take a breath test. Shane consented, but failed to provide a sufficient breath sample to complete the test and, as a result, was arrested for being in "physical control of a motor vehicle" while under the influence of alcohol.[2] Because Shane failed to complete the test, his driver's license was revoked.[3]

Following an implied consent hearing, the district court sustained the revocation of Shane's driver's license, finding Shane had "refused to give an adequate sample of his breath for testing purposes" and the police had "probable cause to believe that [Shane] was in physical control" of the vehicle.

■■■ The only question presented for our review is whether, at the time of Shane's arrest, the police officers had probable cause to believe that Shane was in physical control

---

1. The entire stop was recorded by the video camera in the officer's squad car.

2. Shane was also arrested for obstructing the legal process and exhibition driving.

3. Minnesota Statutes section 169.123, subd. 4(c) (1996) provides:

Upon certification by the peace officer that there existed probable cause to believe the person had been * * * in physical control of a motor vehicle in violation of section 169.121 and that the person refused to submit to a test, the commissioner of public safety shall revoke the person's license * * * for a period of one year.

of the Bronco. A police officer may require a person to take an implied consent test when the officer has probable cause to believe the person was driving, operating, or in physical control of a motor vehicle.[4] Police have probable cause to believe a person is in physical control of a vehicle while under the influence of alcohol when, based on the totality of the circumstances, there is "a reasonable ground of suspicion supported by circumstances sufficiently strong in themselves to warrant a cautious man in believing [that the person was in physical control]."[5] When the facts of a case are undisputed, probable cause is a question of law to be reviewed *de novo*.[6]

The purpose behind the legislature's inclusion of the term physical control in the statute is to "enable the drunken driver to be apprehended before he strikes"[7] and to "deter individuals who have been drinking * * * from getting into their vehicles, except as passengers."[8] To accomplish this purpose, we have stated that the term "physical control" should be given "the broadest possible effect."[9] Our past cases have all interpreted the term "physical control," insofar as it refers to something other than driving or operating a motor vehicle, in "situations where an inebriated person is found in a parked vehicle under circumstances where the car, without too much difficulty, might again be started and become a source of danger to the operator, to others, or to property."[10] In such a situation, "the question arises [as to] whether that [inebriated] person is a passenger or a person in physical control of the motor vehicle."[11] We have not had occasion to analyze the term "physical control" in a case where the person alleged to be in physical control is a known passenger. In *Starfield*, we did, however, say that:

> It is * * * no crime for an intoxicated person to be in a motor vehicle as a passenger. A passenger, by definition, is someone who is merely along for the ride. * * * Mere presence in or about the vehicle is not enough for physical control; it is the overall situation that is determinative.[12]

Here, unlike the situation in our previous cases,[13] the police did not find an inebriated person alone in a vehicle. Shane was a passenger in a vehicle being driven by someone else. By definition, a passenger is merely along for the ride and is not in physical control of the vehicle. Thus, at the time of the initial stop, the police did not have any basis to believe that Shane was in physical control of the vehicle. The Commissioner argues that Shane renounced his original status as a bona fide passenger by actively manipulating the vehicle's controls. We disagree.

The problem presented by the facts of this case is that an inebriated passenger, ordered by the police to remain in a vehicle that has its engine running, is always going to be in a position "without too much difficulty, * * * [to] become a source of danger to [themselves], to others, or to property."[14] Thus, in order for a police officer to have probable cause to believe a known passenger is in physical control of a motor vehicle, the officer must have reason to believe that the passenger has or is about to take some action that makes the motor vehicle a source of danger to themselves, to others, or to property. The record here establishes that the only

4. Minn.Stat. § 169.123, subd. 2(a) (1996).

5. *State v. Harris*, 265 Minn. 260, 264, 121 N.W.2d 327, 330 (1963) (quoting *Garske v. United States*, 1 F.2d 620, 623 (8th Cir.1924)); *see also State v. Starfield*, 481 N.W.2d 834, 838 (Minn. 1992); *Eggersgluss v. Comm'r of Pub. Safety*, 393 N.W.2d 183, 185 (Minn.1986).

6. *Allen v. Osco Drug, Inc.*, 265 N.W.2d 639, 642–43 (Minn.1978).

7. *Starfield*, 481 N.W.2d at 837 (quoting *State v. Webb*, 78 Ariz. 8, 274 P.2d 338, 339 (Ariz.1954)).

8. *State v. Juncewski*, 308 N.W.2d 316, 320 (Minn. 1981) (quoting *State v. Ghylin*, 250 N.W.2d 252, 255 (N.D.1977)).

9. *Juncewski*, 308 N.W.2d at 319.

10. *Starfield*, 481 N.W.2d at 837.

11. *Id.* at 838.

12. *Id.*, at 837–38.

13. *Id.* at 835; *Juncewski*, 308 N.W.2d at 318.

14. *Starfield*, 481 N.W.2d at 837.

action the officers who stopped the Bronco observed was that Shane, after being ordered to remain in the Bronco, leaned over from the passenger seat and evidently touched the Bronco's gas pedal briefly, causing its engine speed to increase and a visible increase in the exhaust coming from its tail pipe. There is no evidence in the record that Shane did anything else. There is no evidence, and the officers who stopped the Bronco have not alleged, that Shane put himself in a position to move the Bronco or that he caused the Bronco to move. Further, the record is clear that Shane did not move to the driver's seat, touch the steering wheel, or put the Bronco in gear. Nor is there any evidence, and the officers have not alleged, that Shane made any attempt to do these things.

We conclude, based on what the two police officers observed during the stop, that the officers had no reason to believe that Shane had or was about to take some action that would make the Bronco a source of danger to himself, to others, or to property. The mere act of a known passenger leaning over and touching a vehicle's gas pedal, without more, is not an action that makes the vehicle a source of danger to the passenger, to others, or to property. To the extent the police officers were concerned about what Shane might do after he sat back up in the passenger seat, removing him from the vehicle [15] eliminated any possibility of Shane turning the Bronco into a source of danger. Therefore, under the circumstances of this case, the police officers did not have probable cause to believe Shane was in physical control of the Bronco.

Reversed.

[15]. *Maryland v. Wilson*, 519 U.S. 408, 415, 117 S.Ct. 882, 137 L.Ed.2d 41 (1997) (holding that "an officer making a traffic stop may order passengers to get out of the car pending completion of the stop").