STATE of Minnesota, Respondent,

v.

Larry Louis JACKSON, Appellant.

No. C4–90–1542.

Supreme Court of Minnesota.

Aug. 9, 1991.

John Stuart, State Public Defender, Heidi H. Crissi, Sp. Asst. State Public Defender, St. Paul, for appellant.

Hubert H. Humphrey, III, Atty. Gen., St. Paul, and Thomas L. Johnson, Hennepin County Atty., Lee W. Barry, Sr. Asst. County Atty., Minneapolis, for respondent.

SIMONETT, Justice.

In its decision in this case the court of appeals affirmed defendant's conviction of aggravated robbery against a number of claims, including that the trial court erred in admitting a statement defendant gave to police when he was being held in custody in violation of Minn.R.Crim.P. 4.02, requiring that the so-called initial arraignment be held without unnecessary delay. *State v. Jackson,* 469 N.W.2d 457 (Minn.App.1991). Two weeks after the court of appeals decided this case, the United States Supreme Court decided *County of Riverside v. McLaughlin,* —— U.S. ——, 111 S.Ct. 1661, 114 L.Ed.2d 49 (1991). We granted defendant's petition for review for the limited purpose of making it clear we have considered defendant's case in light of that decision, as requested by defendant, and have concluded defendant is not entitled to any relief based upon it. We affirm.

At 10:00 p.m. on Thursday, December 14, 1989, a married couple spotted a man robbing and attempting to kidnap a neighborhood resident. While the wife called 911, the husband ran after the robber as he fled on foot. Police arrived a short time later and followed the robber's fresh tracks in the snow to defendant's house. Defendant answered the door when the police knocked, and he consented to a search of his house. Police found shoes with snow on them and the shoes were of the same size of those that had left the tracks in the snow. Defendant claimed he had been in the house since 6:00 p.m. except to take out the trash and that that explained the footprints. He claimed that he had gone to look at a van by his yard to see if anyone was in it. He claimed the van had not been there before 6:00 p.m., but police noted the accumulated snow from previous snowfalls surrounding the van. Police also noted that no tracks led to the trash can and that there was a substantial amount of trash in defendant's kitchen. After finding the victim's purse, which had been thrown over the fence of defendant's yard, they arrested defendant.

Defendant was questioned the next day and, as he did at the time of the arrest, denied knowing about the robbery.

At noon on Saturday, December 16, the second day after the arrest, defendant was released on the probable cause hold relating to the robbery pending the filing of a formal complaint. *See* Minn.R.Crim.P. 4.02, subd. 5. Meanwhile, however, defendant's probation officer, acting pursuant to Minn.R.Crim.P. 27.04, subd. 1, had obtained a warrant authorizing the arrest and detention of defendant for violating the terms of his probation. This warrant, which apparently was based on a probable cause showing concerning defendant's alleged participation in the December 14 robbery, was executed immediately upon defendant's release from the probable cause hold relating to the robbery.

On Wednesday, December 20, while still in custody on the probation violation warrant, *defendant* summoned police to talk with them. After again being given a *Miranda* warning, defendant said that he had lied about the van not being there earlier and about his lack of knowledge of the robbery. He said that his 14–year–old brother had committed the robbery while dressed in his, defendant's, clothes. Defendant said he had gone into the yard to throw the purse over the fence. Asked why the tracks were not consistent with

this, defendant said the police were lying about the tracks.

A formal complaint charging defendant with the robbery was filed on Thursday, December 21, and defendant made his first appearance before a judge on Tuesday, December 26.

The court of appeals rejected defendant's contention that the police, by using the probation violation warrant and arresting defendant pursuant to that warrant, wanted to keep defendant in custody so that they could gather evidence. The court of appeals said there was no support in the record for this. It also noted that the police did not pressure defendant to give a statement; instead, defendant himself summoned the police.

It is clear that the delays in this case were unjustified and in violation of Minn. R.Crim.P. 3.02, subd. 2, 4.02, subd. 5, and 27.04, subd. 1(2).

The court of appeals reached the same conclusion but, using the suppression analysis we used in *State v. Wiberg*, 296 N.W.2d 388 (Minn.1980),[1] concluded that suppression was not required. It also held that even if admission of the evidence was error, it was harmless error.

After the court of appeals filed its decision, the United States Supreme Court decided *County of Riverside v. McLaughlin*, 111 S.Ct. at 1661. *McLaughlin* held: (a) although states may combine post-warrantless arrest judicial probable cause determinations with other pretrial procedures such as bail hearings and initial arraignments, they may do so only if they hold the combined hearing as soon as is reasonably feasible but generally no later than 48 hours after arrest; (b) a probable cause determination even within 48 hours after arrest will not pass constitutional muster if the arrestee proves the determination was delayed unreasonably (for example, for the purpose of gathering additional evidence to justify the arrest); (c) a probable cause determination made later than 48 hours after arrest is unconstitutional unless the state demonstrates the existence of a bona fide emergency or other extraordinary circumstance (the fact that the arrest occurred on a Friday night and judges are not available over the weekend is not an extraordinary circumstance).

Defendant in his petition for review urged us to review the court of appeals' decision in light of *McLaughlin*.

As we said at the outset, we granted review for the limited purpose of making it clear that we have considered defendant's case in light of *McLaughlin* and have concluded defendant is not entitled to any relief based upon it. There are three reasons why *McLaughlin* does not help defendant. First, it appears the probation revocation warrant was issued in compliance with Minn.R.Crim.P. 27.04, subd. 1, which requires a determination of probable cause by a judge before the warrant is issued. *McLaughlin* deals with *warrantless* arrests, not with arrests preceded by a judicial determination of probable cause. Second, the court of appeals held that the delays in this case did not require suppression under *Wiberg*. Third, the court of appeals held that any error by the trial court in admitting defendant's statement was harmless error beyond a reasonable doubt.

Our decision, of course, is fact-specific. A similar delay on a different record might require a different result.

Affirmed.

---

**1.** *Wiberg* held any unnecessary delay in the initial arraignment violates Minn.R.Crim.P. 4.02 (which adopts the so-called 36–hour limit for the initial arraignment) even if the initial arraignment occurs within the 36–hour period (excluding Sundays and legal holidays). 296 N.W.2d at 392. However, *Wiberg* held that violation of the prompt initial arraignment rule does not necessarily require suppression of any confession or statement obtained during the period before the defendant is brought before a judge, even if the confession has a reasonable relationship to the delay. *Id.* at 393. It held that the suppression/admission decision depends also on factors such as the reliability of the evidence, the length of the delay, whether the delay was intentional, and whether the delay compounded the effects of other police misconduct. *Id. See also Meyer v. State*, 316 N.W.2d 545 (Minn.1982).